**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LULULEMON ATHLETICA CANADA INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 18-cv-00917 |
| ) | |
| v. ) | |
| ) | |
| THE PARTNERSHIPS and ) | |
| UNINCORPORATED ASSOCIATIONS ) | |
| IDENTIFIED ON SCHEDULE "A," ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

Plaintiff Lululemon Athletica Canada Inc. ("Lululemon") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain

Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Lululemon's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Lululemon's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Lululemon substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Lululemon to combat online counterfeiters who trade upon Lululemon's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products and services using counterfeit versions of Lululemon's federally registered trademarks (collectively, the "Counterfeit Lululemon Products"). Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine Lululemon products, while actually selling Counterfeit Lululemon Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Lululemon Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Lululemon is forced to file

these actions to combat Defendants' counterfeiting of Lululemon's federally registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Lululemon Products over the Internet. Lululemon has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.     Lululemon is a yoga-inspired athletic apparel company founded in Vancouver, British Columbia, Canada (where it continues to be based) in 1998 by Dennis "Chip" Wilson that creates unique athletic apparel and accessories. Lululemon sells many high-quality products, including but not limited to, clothing and apparel such as shirts, jackets, sweat pants, yoga pants, tank tops, sweatshirts, sports bras, shorts, caps and headbands; as well products other than clothing such as yoga mats, bags, and accessories, and also provides branded retail store services, including over the Internet, to carefully control customer experiences and further enhance the appeal of the Lululemon brand (these and other genuine Lululemon branded products are collectively referred to herein as the "Lululemon Products"). While Lululemon has its roots in yoga, Lululemon Products are increasingly used for other athletic and casual lifestyle pursuits, such as running and general fitness. Lululemon works with local athletes and fitness practitioners to enhance Lululemon brand awareness. Lululemon Products are designed to offer performance, fit and comfort while incorporating both function and style. Lululemon's heritage of combining performance and style distinctly positions Lululemon to address the needs of athletes, as well as a growing core of consumers who desire everyday casual wear that is consistent with their active lifestyles.

5.     Since its founding in 1998, the unique and highly desirable Lululemon Products have led to enormous growth and financial success for Lululemon.  In 2016, Lululemon reported revenue of $2.34 Billion and over $300 Million in net income.  The company went public on the NASDAQ stock exchange in 2007, and Lululemon's current market capitalization exceeds $8 Billion.

6.     The root of this financial success lies in Lululemon's ability to consistently deliver highly desirable Lululemon Products.  Lululemon Products have become enormously popular and even iconic, driven by Lululemon's arduous quality standards and innovative design. Among the purchasing public, genuine Lululemon Products are instantly recognizable as such. In the United States and around the world, the Lululemon brand has come to symbolize high quality, and Lululemon Products are among the most recognizable athletic apparel in the world.

7.     The prestige of the Lululemon brand is further enhanced by careful distribution of Lululemon Products using a vertical model in which Lululemon provides retail store services to operate its own Lululemon branded stores.  Lululemon Products are sold exclusively through Lululemon's 351 distinctive retail stores, including nine in Chicago (one of which is located in the exclusive Michigan Avenue shopping district), as well as through certified partners that offer Lululemon gear in premium yoga studios, gyms, and/or wellness centers.  Lululemon's retail store services are provided through operation of these branded stores.  Lululemon's vertical retail strategy allows Lululemon to interact more directly with their customers and to tightly control the consumer's retail experience.

8.  Providing genuine Lululemon branded retail store services over the Internet to sell genuine Lululemon Products is an important part of Lululemon's business strategy.  Since at least 2009, Lululemon has operated a website at <Lululemon.com> where it promotes and sells

4

genuine Lululemon Products. Direct to consumer net revenue increased $51.8 million, or 13%, to $453.3 million in fiscal 2016 compared to fiscal 2015, primarily as a result of increased traffic on Lululemon's e-commerce websites. The lululemon.com website features proprietary content, images and designs exclusive to Lululemon.

9. Lululemon's cultural and community-based business approach has provided Lululemon with a competitive advantage that is responsible for the brand's strong financial performance. In the years 2004 – 2016, Lululemon's net revenue has increased from $40 million annually to $2.34 billion, an extraordinary growth of over 3,000% during challenging economic times. Lululemon's growth and success have not gone unnoticed. The brand has earned numerous industry awards and accolades. As an example, Lululemon was named International Retailer of the Year by the National Retail Foundation in 2012.

10. Lululemon's trademarks are critical to its business. Lululemon is the owner of and has widely promoted several trademarks which have earned substantial fame and considerable goodwill among the public. Lululemon has used its trademarks (collectively, the "LULULEMON Trademarks") on and in association with its entire line of athletic apparel and accessories, as well as in connection with packaging, retail store services (including nine retail stores in Chicago), and online e-commerce. Lululemon Products always include at least one of the LULULEMON Trademarks. Often several LULULEMON Trademarks are displayed on a single Lululemon Product. Lululemon incorporates a variety of distinctive marks in its various Lululemon Products. Consequently, the United States Patent and Trademark Office has granted Lululemon multiple federal trademark registrations. Lululemon uses the LULULEMON Trademarks in connection with the marketing of its Lululemon Products. The LULULEMON

Trademarks, including, but not limited to those listed below, are famous and valuable assets of Lululemon.

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 4,391,115 | LULULEMON | Clothing, namely, t-shirts, shirts, tank tops, sweatshirts, sweaters, jerseys, jumpers, pants, sweatpants, shorts, skirts, dresses, jackets, coats, vests, underwear, socks, warm-up suits, bodysuits, leotards, tights, leggings, leg warmers; headwear, namely, hats, caps, toques, visors, headbands, bandanas; clothing accessories, namely, belts, scarves, shawls, shoulder wraps, arm warmers, mittens, gloves; sandals in class 025. |
| 4,367,598 | lululemon athletica | Clothing, namely, t-shirts, shirts, tank tops, sweatshirts, sweaters, jerseys, jumpers, pants, sweatpants, shorts, skirts, dresses, jackets, coats, vests, underwear, socks, warm-up suits, bodysuits, leotards, tights, leggings, leg warmers; headwear, namely, hats, caps, toques, visors, headbands, bandanas; clothing accessories, namely, belts, scarves, shawls, shoulder wraps, arm warmers, mittens, gloves; sandals in class 025. |
| 2,607,811 | lululemon athletica | Clothing, namely, pants, shirts, t-shirts, shorts, sweatshirts, sweatpants, socks, jackets, coats, hats in class 025. |
| 2,460,180 | (logo) | Clothing, namely, pants, shirts, t-shirts, shorts, sweatshirts, sweatpants, socks, jackets, coats, hats in class 025. |
| 4,345,516 | (logo) | Yoga backpacks, waist packs in the nature of water bottle carriers, messenger bags, cosmetic bags sold empty, athletic gym bags, sport bags, |

| | | |
|---|---|---|
| | | beach bags, backpacks, tote bags, handbags, mesh shopping bags, fanny packs in class 018.

Clothing, namely, t-shirts, shirts, tank tops, sweatshirts, sweaters, jerseys, jumpers, pants, sweatpants, shorts, skirts, dresses, jackets, coats, vests, underwear, socks, warm-up suits, bodysuits, leotards, tights, leggings, leg warmers; headwear, namely, hats, caps, toques, visors, headbands, bandanas, belts, scarves, shawls, shoulder wraps, arm warmers, mittens, gloves in class 025.

Yoga mats, yoga mat carrying cases, yoga blocks; Exercise equipment, namely, pull loops, stretch bands, and balance balls used for yoga; flying disks, skipping ropes; yoga mat straps in class 028. |
| 3,985,876 | LULULEMON ATHLETICA | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |
| 3,990,179 | LULULEMON | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living; online retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |

| | | |
|---|---|---|
| 3,985,877 |  | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living; online retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |
| 3,985,881 |  | Retail store services featuring clothing, apparel, accessories, headwear, socks, yoga equipment, athletic equipment, bags, backpacks, tote bags, pre-recorded DVDs, featuring topics relating to yoga instruction, yoga philosophy, exercise and health living in class 035. |
| 4,356,115 | BOOBY BRACER | Bras, sport bras in class 025. |
| 3,795,820 | BOOLUX | T-shirts; Shirts; Tank tops; Sweat shirts; Sweaters; Pants; Sweat pants; Shorts; Skirts; Dresses; Warm up suits; Body suits; Leotards; Unitards; Tights; Coverups; Leggings; Leg warmers; Jackets; Coats; Vests; Scarves; Shawls; Shoulder wraps; Pajamas; Robes; Underwear; Socks; Gloves; Headwear, namely, Hats, Caps, Berets, Toques, Visors, Headbands, Bandanas in class 025. |
| 4,234,113 | DEFINE JACKET | Clothing, namely, jackets in class 025. |
| 3,978,257 | GROOVE | Yoga pants in class 025. |
| 3,978,258 | GROOVE PANT | Yoga pants in class 025. |
| 3,024,374 | LUON | Clothing, namely, T-shirts, shirts, pants, shorts, sweatshirts, sweatpants, tank tops, jackets, coats and hats for men, |

| | | |
|---|---|---|
| | | women and children in class 025. |
| 3,976,389 | LUXTREME | Body suits; Jackets; Leggings; Pants; Shirts; Shorts; Skirts; Tank tops; Tights in class 025. |
| 4,214,052 | POWER Y | Clothing, namely, tank tops, bras in class 025. |
| 4,219,265 | RULU | Clothing, namely, T-shirts, shirts, pants, shorts, sweatshirts, sweatpants, tank tops, underwear, socks, jackets, coats and hats for men, women and children in class 025. |
| 4,333,759 | SCUBA | Clothing, namely, hooded sweatshirts, jackets, coats, tops in class 025. |
| 4,033,939 | SET-MY-PONYTAIL-FREE | Clothing, namely, hooded sweatshirts, jackets and coats; Headwear, namely, hats and caps in class 025. |
| 3,116,371 | SILVERESCENT | Clothing, namely T-shirts, shirts, pants, shorts, skirts, dresses, sweatshirts, sweatpants, tank tops, underwear, socks, jackets, coats, headwear, footwear in class 025. |
| 4,214,049 | WUNDER UNDER | Clothing, namely crop pants, pants, shorts, tights, leggings in class 025. |

11. The above U.S. registrations for the LULULEMON Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the LULULEMON Trademarks constitute *prima facie* evidence of their validity and of Lululemon's exclusive right to use the LULULEMON Trademarks pursuant to 15 U.S.C. § 1057(b). The LULULEMON Trademarks have been used exclusively and continuously by Lululemon and its subsidiaries, some since at least as early as 1998, and have never been

abandoned.  True and correct copies of the United States Registration Certificates for the above-listed LULULEMON Trademarks are attached hereto as **Exhibit 1.**

12.     The LULULEMON Trademarks are exclusive to Lululemon, and are displayed extensively on Lululemon Products and in Lululemon's marketing and promotional materials. Lululemon Products have long been among the most popular athletic and yoga apparel in the world and have been extensively promoted at great expense.  In fact, Lululemon expends millions of dollars annually promoting and marketing the LULULEMON Trademarks. Lululemon Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items.  Because of these and other factors, the Lululemon name and the LULULEMON Trademarks have become famous throughout the United States.

13.     The LULULEMON Trademarks are distinctive when applied to the Lululemon Products, signifying to the purchaser that the products come from Lululemon and are consistent with Lululemon's quality standards.  Whether Lululemon manufactures the products itself or licenses others to do so, Lululemon has ensured that products bearing the LULULEMON Trademarks are manufactured to the highest quality standards, and likewise ensures that the provision of retail store services under the LULULEMON Trademarks is consistent with the highest quality standards.  The LULULEMON Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with the LULULEMON Trademarks is of incalculable and inestimable value to Lululemon.

**The Defendants**

14.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Lululemon Products to consumers within the United States, including the State of Illinois.

15.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products and to provide retail store services using counterfeit versions of the LULULEMON Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Lululemon to learn Defendants' true identities and the exact interworking of their counterfeit network.  In the event that Defendants provide additional credible information regarding their identities, Lululemon will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

16.     The success of the Lululemon brand has resulted in its significant counterfeiting. Consequently, Lululemon has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  In recent years, Lululemon has identified thousands of

domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Lululemon Products to consumers in this Judicial District and throughout the United States. Despite Lululemon's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

17.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from Lululemon's website or another authorized website. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Lululemon has not licensed or authorized Defendants to use any of the LULULEMON Trademarks, and none of the Defendants are authorized retailers of genuine Lululemon Products.

18.     Many Defendants also deceive unknowing consumers by using the LULULEMON Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Lululemon Products.   Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Lululemon Products. Other Defendants only show the LULULEMON Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for genuine Lululemon Products.

19.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information.   On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.   Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

20.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.   For example, many of the

Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Lululemon Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Lululemon Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and design elements, including content copied from Lululemon's official lululemon.com website.

21.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

22.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can

continue operation in spite of Lululemon's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

23.     Defendants, without any authorization or license from Lululemon, have knowingly and willfully used and continue to use the LULULEMON Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Lululemon Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Lululemon Products into the United States, including Illinois.

24.     Defendants' use of the LULULEMON Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Lululemon Products, including the sale of Counterfeit Lululemon Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Lululemon.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

25.     Lululemon hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 24.

26.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered LULULEMON Trademarks in connection with the sale, offering for sale, distribution, and/or

advertising of infringing goods and services. The LULULEMON Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from the Lululemon Products offered, sold or marketed under the LULULEMON Trademarks.

27.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the LULULEMON Trademarks without Lululemon's permission.

28.     Lululemon is the exclusive owner of the LULULEMON Trademarks. The United States Registrations for the LULULEMON Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Lululemon's rights in the LULULEMON Trademarks, and are willfully infringing and intentionally using counterfeits of the LULULEMON Trademarks. Defendants' willful, intentional and unauthorized use of the LULULEMON Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Lululemon Products among the general public.

29.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

30.     Lululemon has no adequate remedy at law, and if Defendants' actions are not enjoined, Lululemon will continue to suffer irreparable harm to its reputation and the goodwill of its well-known LULULEMON Trademarks.

31.     The injuries and damages sustained by Lululemon have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Lululemon Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

32.     Lululemon hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 31.

33.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Lululemon Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Lululemon or the origin, sponsorship, or approval of Defendants' Counterfeit Lululemon Products by Lululemon.

34.     By using the LULULEMON Trademarks on the Counterfeit Lululemon Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Lululemon Products.

35.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Lululemon Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

36.     Lululemon has no adequate remedy at law and, if Defendants' actions are not enjoined, Lululemon will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

37.     Lululemon hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 36.

38.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Lululemon Products as those of Lululemon, causing a likelihood

of confusion and/or misunderstanding as to the source of their goods or services, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Lululemon Products, representing that their Counterfeit Lululemon Products have Lululemon's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

39. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

40. Lululemon has no adequate remedy at law, and Defendants' conduct has caused Lululemon to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Lululemon will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Lululemon prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the LULULEMON Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product or service that is not a genuine Lululemon Product or is not authorized by Lululemon to be sold in connection with the LULULEMON Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product or service as a genuine Lululemon Product or any other service or product produced by Lululemon

18

that is not Lululemon's or not produced under the authorization, control, or supervision of Lululemon and approved by Lululemon for sale under the LULULEMON Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Lululemon Products are those sold or provided under the authorization, control, or supervision of Lululemon, or are sponsored by, approved by, or otherwise connected with Lululemon;

d.  further infringing the LULULEMON Trademarks and damaging Lululemon's goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Lululemon, nor authorized by Lululemon to be sold or offered for sale, and which bear any of Lululemon's trademarks, including the LULULEMON Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2)  Entry of an Order that, upon Lululemon's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Lululemon, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Lululemon's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any

steps necessary to transfer the Defendant Domain Names to a registrar account of Lululemon's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Lululemon's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

   a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the LULULEMON Trademarks;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the LULULEMON Trademarks; and

   c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Lululemon all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the LULULEMON Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Lululemon be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the LULULEMON Trademarks;

6) That Lululemon be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.


Dated this 5th day of February 2018.　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　/s/ Justin R. Gaudio_____
　　　　　　　　　　　　　　　　Amy C. Ziegler
　　　　　　　　　　　　　　　　Justin R. Gaudio
　　　　　　　　　　　　　　　　Jessica L. Bloodgood
　　　　　　　　　　　　　　　　Greer, Burns & Crain, Ltd.
　　　　　　　　　　　　　　　　300 South Wacker Drive, Suite 2500
　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　312.360.0080
　　　　　　　　　　　　　　　　312.360.9315 (facsimile)
　　　　　　　　　　　　　　　　aziegler@gbc.law
　　　　　　　　　　　　　　　　jgaudio@gbc.law
　　　　　　　　　　　　　　　　jbloodgood@gbc.law

　　　　　　　　　　　　　　　　*Counsel for Plaintiff*
　　　　　　　　　　　　　　　　*Lululemon Athletica Canada Inc.*